# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| LINDA J. HOWARD, | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| vs. | )   **Civil Action No. 5:15-CV-00393-CLS** |
| | ) |
| JACKSON COUNTY HEALTH | ) |
| CARE AUTHORITY, | ) |
| | ) |
|     **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

This action is before the court on defendant's motion for summary judgment.[1]

Upon consideration of the pleadings, evidentiary submissions, and briefs, the court

concludes that the motion should be granted.

## I.  PROCEDURAL HISTORY

Plaintiff, Linda Howard, filed this action in the Circuit Court of Jackson

County, Alabama, on March 2, 2015.[2]  Her complaint purported to assert age

discrimination claims under each of the following statutes, even though most do not

countenance such claims:  *i.e.*,  Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e *et seq.* ("Title VII"); the federal Age Discrimination in Employment Act of

---

[1] Doc. no. 23.

[2] Doc. no. 1-1 (Complaint), at 1.

1967, 29 U.S.C. § 621 *et seq.* ("ADEA"); the Genetic Information Nondiscrimination

Act, Pub. L. No. 110-233, 122 Stat. 881 (2008) ("GINA"); the Older Workers Benefit

Protection Act, Pub. L. No. 101-433, 104 Stat. 978 (1990); the Equal Pay Act of

1963, 29 U.S.C. § 206(d)(1);[3] the Alabama Age Discrimination in Employment Act,

Ala. Code § 25-1-20 *et seq.* (1975) ("AADEA"); and the Americans with Disabilities

Act, 42 U.S.C. § 12101 *et seq.* ("ADA").[4]  That pleading also asserted state-law

claims of negligence and breach of contract.[5]

Highlands Medical Center, Cumberland Health and Rehab, and Brad Hinton

were named as defendants.[6]

Defendants properly removed the action to this court on March 5, 2015, on the

basis of federal question jurisdiction.[7]  *See* 28 U.S.C. §§ 1331, 1367(a).  By order

entered on August 10, 2015, the court dismissed as defendants the nonjuridical

entities Highlands Medical Center and Cumberland Health and Rehab, and dismissed

plaintiff's claims based upon Title VII, GINA, and the AADEA, as well as her state-

law breach of contract and negligence claims.[8]  The court also dismissed plaintiff's

---

[3] *See also* Pub. L. No. 88-38, 77 Stat. 56 (1963).

[4] Doc. no. 1-1 (Complaint), ¶ 7(a).

[5] *Id.* ¶¶ 10-13 (Negligence), 14-17 (Breach of Contract).

[6] *See id.*

[7] Doc. no. 1 (Notice of Removal).

[8] *See* doc. no. 15 (Order), at 10.

ADEA claim as to defendant Brad Hinton, thereby terminating Hinton as a defendant.[9]  Finally, the court ordered plaintiff to file an *amended complaint* naming "Jackson County Health Care Authority" as the proper juridical entity.[10]

Plaintiff's amended complaint, even though correctly naming "Jackson County Health Care Authority" as the sole defendant, alleged violations of "TITLE VII of the Civil Rights Act, . . . the Genetic Infomration [*sic*] Nondiscrimination Act, . . . [and] Alabama Code § 25-1-21," the Alabama Age Discrimination in Employment Act.[11] Moreover, under "Count One — Age Discrimination," plaintiff alleged damages resulting from "the negligence and carelessness of the Defendant."[12]  The court accordingly struck that pleading as being noncompliant with the court's previous order, and ordered plaintiff to file a *second amended complaint*.[13]

Plaintiff's second amended complaint asserts claims of age discrimination under both the ADEA and the Older Workers Benefit Protection Act.[14]  That pleading does not assert claims under either the Equal Pay Act or ADA.  Plaintiff therefore has abandoned those claims.

---

[9] *Id.  See Smith v. Lomax*, 45 F.3d 402, 403 n.4 (11th Cir. 1996) (supervisors cannot be held liable in their individual capacities under the ADEA).

[10] Doc. no. 15 (Order), at 10.

[11] Doc. no. 16 (First Amended Complaint), ¶ 4 (alteration and ellipses supplied).

[12] *Id.* ¶ 7.

[13] *See* doc. no. 17 (Order Striking First Amended Complaint).

[14] *See* doc. no. 18 (Second Amended Complaint).

Moreover, on April 27, 2016, this court ordered plaintiff to show cause, on or before May 4, 2016, why her claim bottomed on the Older Workers Benefit Protection Act should not be dismissed, due to her failure to state a claim upon which relief could be granted.[15]  *See* Fed. R. Civ. P. 12(b)(6).  Plaintiff failed to do so. Accordingly, this court dismissed that claim by order entered on May 9, 2016.[16]

In summary, this action now asserts only one claim — *i.e.*, a claim of age discrimination under the federal ADEA — against one defendant, the Jackson County Health Care Authority.

The scheduling order entered in this action on June 18, 2015 specified that "[a]ll discovery must be commenced in time to be completed by January 20, 2016."[17] Defendant promptly served requests for discovery, and plaintiff served responses thereto on August 28, 2015.[18]  Plaintiff did not serve her *own* discovery, however, until January 13, 2016, *only one week prior to the discovery deadline.*[19] Defendant accordingly asked this court to enter a protective order stating that

> Plaintiff's Interrogatories and Requests for Production were not timely filed, so as to be due responses before the discovery cutoff.  As the Plaintiff has expressed interest in a deposition, and in consideration of

---

[15] *See* doc. no. 43 (Show Cause Order).

[16] *See* doc. no. 45 (Order Dismissing Fewer Than All Claims).

[17] *See* doc. no. 14 (Scheduling Order) (alteration supplied).

[18] *See* doc. nos. 12, 19.

[19] *See* doc. nos. 27, 28.

> [a previously-scheduled state court setting] creating a schedule problem
> for the undersigned, the Defendant asks that such Protective Order
> extend to any attempt to depose any witnesses or parties at this late date.

Doc. no. 30 (Motion for Protective Order), ¶ 16 (alteration supplied).  After reviewing the motion and the response filed by plaintiff, the court concluded that the excuses offered by plaintiff's counsel — that he has less legal experience than defendant's counsel,[20] and that "Defendant's *offensive* . . . maneuvers" had "kept the Plaintiff in a defensive, *responsive* position"[21] — did not constitute good cause for modification of the scheduling order.  Accordingly, the court granted defendant's motion.[22]

## II.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

---

[20] Doc. no. 31, at 1.

[21] *Id.* at 2 (emphasis in original, ellipsis supplied).

[22] *See* doc. no. 33 (Order).

5

"In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).  Inferences in favor of the non-moving party are not unqualified, however.  "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation."  *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983).  Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is *material* to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921) (emphasis supplied).  *See also Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 251-52 (1986) (asking "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

## III.  FACTUAL BACKGROUND

Defendant, Jackson County Health Care Authority, is a governmental agency organized to provide health care services through facilities located in Jackson County,

Alabama.[23]  *See* Ala. Code § 22-21-310 *et seq.* (1975).  Plaintiff was employed as an environmental services aide ("ESA") at defendant's "Cumberland Health and Rehab" nursing home facility in Bridgeport, Alabama, from January 15, 2007 until her termination on September 4, 2013.[24]

Defendant contends that it terminated plaintiff's employment for acts of misconduct:  specifically, theft of canned soft drinks and personal hygiene products.[25] The facility's "Employee Rules of Conduct" state that "*theft*, or *unauthorized removal of* [the facility's] *property*, fraud, or conversion thereof, are *terminable* offenses *on the first offense*."[26]

Plaintiff admits that she removed and consumed canned soft drinks that had been purchased by the facility and reserved for use by the facility's residents.[27]  She testified that she consumed "[p]robably at least one [canned soft drink] a day" for the duration of her tenure at Cumberland Health and Rehab[28] (*i.e.*, more than 1,500 soft

---

[23] Doc. no. 23-1 (Sivley Affidavit), ¶ 4.

[24] *See* doc. no. 41 (Linda Howard Employee Record), at ECF 5; doc. no. 23-1 (Sivley Affidavit), ¶ 5.

[25] Doc. no. 23 (Motion for Summary Judgment), at 17.  The Employee Record maintained by defendant for plaintiff states that plaintiff was terminated for "unauthorized removal of company property — found items in her personal belongings."  Doc. no. 41, at ECF 5.

[26] *See* doc. no. 23-8 (Employee Rules of Conduct), at 5 (alteration and emphasis supplied); doc. no. 23-1 (Sivley Affidavit), ¶ 14

[27] Doc. no. 23-3 (Plaintiff's Response to Defendant's Request for Admissions), ¶¶ 3-6.

[28] Doc. no. 23-4 (Howard Deposition), at 39 (alterations supplied).

drinks if plaintiff worked for defendant approximately five days per week for over 6.5 years) but asserted that such conduct was pervasive among the facility's staff.  In her own words:  "There ain't a one in this place that ain't done it."[29]

On September 4, 2013, the facility's Personnel Director, Cheryl Haney, and Administrator, Brad Hinton, asked plaintiff for permission to search her personal bags at the conclusion of her shift.[30]  Plaintiff consented.  Haney and Hinton discovered canned soft drinks, mouthwash, and rubbing alcohol inside the bags, all of which had been taken from the facility's supply cabinets.[31]  Plaintiff denies that she placed the items in her bag.  She claims to have been "set up" by coworkers Evelyn Kelley, Jack Anderson, and/or Lisa Russell, who, she alleges, planted the contraband in her bags.[32] Administrator Hinton obtained written statements from two coworkers — *i.e.*, Gudrun Stevens and Karen Williams — who reported that plaintiff had been stockpiling canned soft drinks from the facility for an upcoming family vacation to the Smoky Mountains in Tennessee.  Stevens reported that she saw plaintiff on

---

[29] *Id.* at 34 (alteration supplied).

[30] Doc. no. 23-3 (Plaintiff's Response to Defendant's Request for Admissions), ¶ 8; doc. no. 23-4 (Howard Deposition), at 35, 40 (alteration supplied).

[31] *See* doc. no. 23-1 (Sivley Affidavit), ¶ 7 ("The alcohol and mouthwash [found in plaintiff's personal bags on the date of her termination] are of brands that are not available for retail purchase.") (alteration supplied).

[32] Doc. no. 22-3 (Plaintiff's Responses to Interrogatories), ¶ 13.  *See also id.* ¶ 15 ("There were other employees that had been around my bag.  I know I didn't put anything in my bag that didn't belong to me."); *see* doc. no. 23-4 (Howard Deposition), at 41, 89-91.

September 3, 2013 in [the] Environmental Services Supply room with 3 of the facilities [*sic*] cokes in hand, she then proceeded to wrap them in paper towels.  Once she seen that I had saw her[, plaintiff] stated[,] "I need these for the smokies, and you know I don't have any money, please don't say nothing."

Doc. no. 23-7, at ECF 2 (Gudrun Stevens's Statement) (alterations supplied); *see also id.* at ECF 3 (Karen Williams's Statement) (where Karen Williams testified that, "[o]n Monday 9-2-13 I seen [plaintiff] put three cokes in [the] refrigerator and she said she was going to take them to the smokies") (alterations supplied).  Plaintiff testified that Stevens and Williams were "lying."[33]  Nevertheless, defendant's Personnel Director and Administrator believed that plaintiff's possession of the canned soft drinks and hygiene products constituted theft, and plaintiff's employment was terminated for cause on September 4, 2013.

That was not the first occasion on which the facility's management team had experienced difficulties with plaintiff or cited her for misconduct.  In fact, defendant had terminated plaintiff's employment approximately six months earlier, on March 20, 2013, for her third violation of the facility's "tobacco-free-campus policy" within a one-year period.[34]  After being notified of her termination, plaintiff drove to the

---

[33] Doc. no. 23-4 (Howard Deposition), at 53.

[34] Doc. no. 23-1 (Sivley Affidavit), ¶ 10.  Termination is the standard penalty for a third violation of that policy.  *Id.*  When asked during deposition how the facility's administration had discovered the violations, plaintiff stated, "It was the ones in my 'partment [*sic*] that kept running their mouth."  Doc. no. 23-4 (Howard Deposition), at 13.

facility for the purpose of showing her supervisors the substance that she had been

using at work.  She explained that it was not a *tobacco product*, but an "herbal dip

called Smokey Mountain" (*i.e.*, tobacco-free "snuff").[35]  She asked Administrator

Hinton to reinstate her employment based upon that distinction, and he agreed to

commute her punishment from termination to a one-week suspension.[36]

Plaintiff testified during her deposition that she only "dipp[ed] snuff" when a

coworker named Linda Beavers also was working, because Ms. Beavers made her "so

nervous, bullying me[,] that I have to take a dip."[37]  The following inconclusive line

of questioning also occurred during plaintiff's deposition:

> **Q:**   Now, if there were reports that you were seen spitting snuff into
> a sink *in a resident's room*, would you admit that or deny it?
>
> **A:**   Yes, sir, I would.
>
> **Q:**   You would admit it?
>
> **A:**   Yes, sir, I would.
>
> **Q:**   Okay.  How often did that happen?

---

[35] Doc. no. 23-4 (Howard Deposition), at 23.  *See also* http://www.smokeysnuff.com.

[36] Doc. no. 23-1 (Sivley Affidavit), ¶¶ 10, 18; *see also* doc. no. 23-3 (Plaintiff's Responses to Interrogatories), ¶ 17 ("I was terminated on March 20, 2013, because they thought I was using tobacco; but I was using Snuf, which is herbs not tobacco, and after I showed them the Snuf, Brad Hinton agreed it was herbs not tobacco and he hired me back."); doc. no. 23-4 (Howard Deposition), at 19, 21, 23.

[37] Doc. no. 23-4 (Howard Deposition), at 15 (alteration supplied).

**A:**   I don't — As far as I know, I've never spit in no sink.

**Q:**   Okay.  So you deny that you spat —

**A:**   I deny that.

**Q:**   — into a sink?

Doc. no. 23-4 (Howard Deposition), at 16 (emphasis supplied).

A few other incidents also are mentioned in the record.  For example, defendant's Human Resources specialist, Susanna Sivley, testified that plaintiff had spoken to her coworkers about having a gun, and possibly bringing the gun to work.[38] Plaintiff also admitted that she had been involved in two physical altercations with coworkers, although she insists that she was not the aggressor on either occasion.[39]

When plaintiff was terminated for the *second time* — *i.e.*, the September 4, 2013 incident that forms the basis of this suit — she was 64 years of age.[40]  As of that date, defendant employed a total of six full-time environmental services aides ("ESAs") at the Cumberland Health and Rehab facility.[41]  The average age of the

---

[38] Doc. no. 23-1 (Sivley Affidavit), ¶ 11.

[39] Plaintiff noted one incident during which a coworker named Linda Beavers "knock[ed] me back against the wall in there in the laundry room."  Doc. no. 23-4 (Howard Deposition), at 49 (alteration supplied).  Plaintiff also testified that "Lisa Russell hit me in the back coming down the hall and liked to knock me down."  *Id.* at 50.

[40] Doc. no. 23-1 (Sivley Affidavit), ¶ 6.

[41] *Id.* ¶ 12.

other five full-time ESAs was 51 years.[42]   All were over 40 years of age.[43]

Administrator Brad Hinton was 61 years of age,[44] and Personnel Director Cheryl

Haney was 56 years of age.[45]

Plaintiff filed a timely charge of discrimination with the Equal Employment

Opportunity Commission on January 10, 2014.[46]  She alleged the following:

> I am 64 years old.  I began my employment with [Cumberland
> Health and Rehab] on June 16, 2007,[47] as a housekeeper.  It is my good
> faith belief that I performed my duties in a satisfactory manner.  On
> April 01, 2013 [*sic*], I was written up for using a tobacco product
> (snuff).  I was discharged in the spring of 2013, for using an herbal snuff
> that is tobacco free.  After appealing to the Cumberland Health Board,
> I was reinstated because I was actually using a non-tobacco product.  I
> was told I would not be allowed to use the non-tobacco product upon my
> return to work.  When I returned my supervisor[s], Judy Thompson and
> Brad Hilton [*sic*], would follow behind me checking my work.  No other
> housekeeper was treated in this manner.  I was discharged on September
> 04, 2013.  *After I was discharged I was replaced by Katlyn* [*sic*]
> *Johnson who is 21 years old.*
>
> The reason for my discharge was that I stole a coke and a bottle
> of mouthwash, which I deny.  Brad Hilton [*sic*], Administrator, viewed
> the surveillance tapes and could not see that I took anything.[48]

---

[42] *Id.*

[43] *Id.*

[44] *Id.* ¶ 17.

[45] *Id.*

[46] *See* doc. no. 23-9 (EEOC Charge).

[47] Plaintiff's Employee Record indicates that she was hired on *January 15*, 2007.  *See* doc. no. 41.

[48] Plaintiff testified in deposition that Administrator Hinton had refused to review the security camera footage.  *See* doc. no. 23-4 (Howard Deposition), at 48-49.

I believe the employer's reason for my discharge was a pretext and that I was actually discharged because of my age in violation of Title VII of the Civil Rights Act of 1967 [*sic*], as amended.

Doc. no. 23-9 (EEOC Charge) (alterations, footnotes, and ellipsis supplied).

Defendant contends that plaintiff was replaced by Donna Roberts, who was 53 years of age.[49]

After plaintiff's termination on September 4, 2013, she applied for, but was denied, unemployment benefits by the Alabama Department of Industrial Relations. Plaintiff then requested pursuant to Alabama Code § 25-4-92 (1975), and received on October 28, 2013, a telephone hearing before an Administrative Hearing Officer.[50] The specific issue addressed during that hearing was: "[w]hether the claimant [*i.e.*, plaintiff] was discharged or removed from work for a dishonest or criminal act committed in connection with work . . . ."[51] The Administrative Hearing Officer concluded that "[t]he preponderance of evidence shows that the claimant *was*

---

[49] Doc. no. 23-1 (Sivley Affidavit), ¶ 15.  Donna Roberts was promoted to full-time environmental services aide on October 21, 2013.  Doc. no. 23-11 (Donna Roberts Employee Record).

[50] That section states, in pertinent part:  "To hear and decide disputed claims and other due process cases involving a decision of the Department of Industrial Relations, the director shall appoint one or more impartial appeals tribunals, consisting in each instance of an officer or an employee of the Department of Industrial Relations."  § 25-4-92(a).

[51] Doc. no. 23-12 (Department of Labor Telephone Hearing Report), at ECF 2 (alterations and ellipsis supplied).

discharged for misappropriation of employer property for her personal use."[52] Accordingly, the Officer sustained the finding of the Examiner that plaintiff was disqualified from receiving unemployment benefits pursuant to Alabama Code § 25-4-78(3)(a) (1975).[53]

Plaintiff subsequently applied for leave to appeal to the Board of Appeals for the Alabama Department of Labor, pursuant to Alabama Code § 25-4-92(c) (1975).[54] The Board of Appeals denied the application.[55]

Plaintiff then appealed her denial of unemployment benefits to the Circuit Court of Jackson County, Alabama, pursuant to Alabama Code § 25-4-95 (1975).[56] That section states, in pertinent part, that "[w]ithin 30 days after the decision of the

---

[52] *See id.* at ECF 3 (alteration and emphasis supplied).

[53] That section states, in pertinent part: "An individual shall be disqualified for total or partial unemployment . . . . (a) If he was discharged or removed from his work for a dishonest or criminal act committed in connection with his work. . . ." § 25-4-78(3)(a) (ellipses supplied).

[54] That section states:

The decision of an appeals tribunal shall become final 15 days after notice of such decision has been mailed, postage prepaid, to the claimant and other parties to the proceedings, at the address furnished, or, if none shall have been furnished, at their last known addresses, *unless within that time application be made to the board of appeals for permission to appeal to the board of appeals*.

Ala. Code § 25-4-92(c) (emphasis supplied).

[55] *See* doc. no. 23-13, at ECF 2.

[56] Doc. no. 23-1 (Sivley Affidavit), ¶ 21. That appeal was docketed as *Linda Howard v. Alabama Department of Industrial Relations*, Case No. CV-2014-3, Circuit Court of Jackson County, Ala. (Jan. 17, 2014). *Id.*

14

Board of Appeals has become final, any party to the proceeding . . . may secure a *judicial review thereof* by filing a notice of appeal in the circuit court of the county of the residence of the claimant . . . ." § 25-4-95 (alteration, ellipses, and emphasis supplied).

When plaintiff's appeal came before Jackson County Circuit Judge Jenifer C. Holt, the Jackson County Health Care Authority — the defendant in that action, as well as the present suit — filed a motion for summary judgment. Judge Holt conducted a hearing on October 7, 2015, and granted the motion the following day.[57]

---

[57] The pertinent portion of Judge Holt's order stated that:

> This case comes before the court upon the pleadings and the motion for summary judgment filed by the defendant, Jackson County Health Care Authority. The plaintiff has filed no written response to the motion for summary judgment but appeared by counsel, George Hartline, for the hearing on October 7, 2015. Gary W. Lackey, appeared for the defendant, Jackson County Health Care Authority. Allysone O. Hatfield appeared for the defendant, Alabama Department of Industrial Relations.

> This action is an appeal by the plaintiff from the adverse decisions of the Department of Industrial Relations' administrative process. The administrative hearing officer determined that the plaintiff is disqualified from benefits under the provisions of Section 25-4-78(3)(a) of the Unemployment Compensation Law.

> Upon consideration of all matters offered in support of and in opposition to the defendant's motion for summary judgment, the court is of the opinion that there exist no genuine issues of material fact and that the defendant is entitled to judgment as a matter of law.

> ACCORDINGLY, IT IS ORDERED, ADJUDGED, AND DECREED that the defendant's motion for summary judgment is granted.

Doc. no. 23-14 (State-Court Order Granting Summary Judgment), at ECF 3-4.

Plaintiff did not appeal from the judgment of the State circuit court.

## IV.  DISCUSSION

Plaintiff's response to defendant's motion for summary judgment fails to directly admit or deny each of the allegedly undisputed facts recited by defendant. Instead, plaintiff's counsel states that "much of the 'undisputed relevant material facts' supplied by the Defendant are neither relevant nor material, and are intended to cast the Plaintiff as a troublemaker; some kind of gun-toting, wild-eyed, rule-breaking, soda-stealing, tobacco-chewing cowgirl (born in 1949)."[58] The failure of plaintiff's counsel to directly address each of the allegedly undisputed facts recited by defendant *as required by the Appendix to the Uniform Initial Order* has adversely affected his client, because the court deems as admitted all facts not disputed by plaintiff in her responsive brief.[59]

---

[58] Doc. no. 25 (Plaintiff's Response in Opposition to Summary Judgment), at 4.

[59] Appendix II to the Uniform Initial Order states, in pertinent part:

The first section [of the non-movant's brief in opposition to the motion for summary judgment] must consist of only the non-moving party's disputes, if any, with the moving party's claimed undisputed facts.  The non-moving party's response to the moving party's claimed undisputed facts shall be in *separately numbered paragraphs* that coincide with those of the moving party's claimed undisputed facts.  Any statements of fact that are disputed by the non-moving party must be followed by a specific reference to those portions of the evidentiary record upon which the dispute is based.  *All material facts set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment.*

The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1) (ellipsis supplied).  The protections of the ADEA extend to those individuals who "are at least 40 years of age but less than 70 years of age." 29 U.S.C. § 621(a).

"A plaintiff can establish age discrimination through either direct or circumstantial evidence." *Sims v. MVM, Inc.*, 704 F.3d 1327, 1332 (11th Cir. 2013) (citing *Mora v. Jackson Memorial Foundation, Inc.*, 597 F.3d 1201, 1204 (11th Cir. 2010)).  Plaintiff asserts that the following statements uttered by coworkers constitute "direct evidence" of age discrimination:  coworker Judy Thompson's statement that "she [*i.e.*, Thompson] was going to retire before [facility Administrator] Brad Hinton got rid of her on account of her age";[60] and coworker Evelyn Kelley's statement that "younger people can get around better than the older people."[61]  In addition, plaintiff

---

Doc. no. 10, at 15 (alteration supplied, emphasis in original).

[60] Doc. no. 23-3 (Plaintiff's Response to Defendant's Interrogatories), ¶ 2 (alterations supplied). *See also* doc. no. 23-1 (Sivley Affidavit), ¶ 19 ("Although Linda [*sic*] Thompson was, at one point, Linda Howard's immediate supervisor, Thompson never had the authority to make personnel decisions, including, but not limited to, hiring, discharge, and/or discipline.  Such authority rested solely with Brad Hinton and Cheryl Haney, along with myself [*i.e.*, Susanna Sivley] . . . ." (alteration and ellipsis supplied).

[61] Doc. no. 23-3 (Plaintiff's Response to Defendant's Interrogatories), ¶ 2.

asserts that Administrator Hinton "regularly" asked her when she intended to retire whenever she asked to take a break.[62]  She construes that fact as direct evidence of an age-related animus.  She was not able to recall the dates on which those any of the foregoing statements allegedly were made, however.[63]

"Only the most blatant remarks, whose intent could be nothing other than to discriminate . . . constitute direct evidence of discrimination."  *Carter v. Miami*, 870 F.2d 578, 582 (11th Cir. 1989) (ellipsis supplied).  "In an age discrimination context, the quintessential example of direct evidence would be a management memorandum saying, 'Fire [the plaintiff] — he is too old.'"  *Roberts v. Design & Manufacturing Services*, 167 F. App'x 82, 85 (11th Cir. 2006) (quoting *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1190 (11th Cir. 1997) (in turn quoting *Earley v. Champion International Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990))) (alteration supplied, some internal quotation marks omitted).  Moreover,

> not every comment concerning a person's age presents direct evidence of discrimination.  The . . . Court made clear in [*Young v. General Foods Corp.*, 840 F.2d 825 (11th Cir. 1988)] that remarks referring to characteristics associated with increasing age or facially neutral comments from which a plaintiff has inferred discriminatory intent, are not directly probative of discrimination.

*Carter*, 870 F.2d at 582 (ellipsis and alteration supplied).

---

[62] *Id.* ¶ 3.

[63] *Id.* ¶ 2.

The statements cited by plaintiff do not constitute direct evidence of discrimination.  Judy Thompson's statement concerned *herself*, and was not related to *plaintiff's* employment.  Evelyn Kelley's statement simply was a remark "referring to characteristics associated with increasing age."  *See id.*  Finally, the Eleventh Circuit has held that a supervisor's inquiries as to when an employee intends to retire do not constitute direct evidence of discrimination when such questions are not uttered in close temporal proximity to an adverse employment action, and when age was not the stated reason for the adverse employment action:

> Because the alleged statements can be subject to more than one interpretation, the district court did not err by concluding that [the supervisor's] comments were not direct evidence of employment age discrimination. [The supervisor] never stated that *he was going to fire* [*the plaintiff*] *because he was too old.*  All of the proffered statements, which were primarily made months before Roberts was terminated, require *inferential* leaps that [the supervisor] terminated [the plaintiff] due to his age, which, under the law of this Circuit, is not direct evidence of employment discrimination.

*Roberts v. Design & Manufacturing Services*, 167 F. App'x 82, 85 (11th Cir. 2006) (emphasis in original, alterations supplied).  Plaintiff has neither presented evidence, nor argued that Administrator Hinton's alleged retirement inquiries were made contemporaneously with her termination.  Moreover, the reason for plaintiff's September 4, 2013 termination — as recorded in her Employee Record, and as verbalized to plaintiff on the date that she was fired — was not age, but "unauthorized

19

removal of company property."[64]

Accordingly, plaintiff must satisfy the burden-shifting framework for claims based upon circumstantial evidence that was promulgated by the Supreme Court in a series of three decisions rendered over a period of two decades, beginning with *McDonnell Douglas Corporation v. Green,* 411 U.S. 792 (1973), then elaborated in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), and finally elucidated in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993).  Although those cases involved discrimination claims based upon Title VII of the Civil Rights Act of 1964, a variant of the analysis also applies to claims based upon the ADEA.  *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141-42 (2000) (noting widespread use of *McDonnell Douglas* framework to analyze age discrimination claims based upon circumstantial evidence, and assuming, but not holding, that it applies to ADEA claims) (citing *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311 (1996) (assuming that *McDonnell Douglas* analytical framework applies to ADEA claims based on circumstantial proofs)).  *See also, e.g.*, *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*) (same); *Bogle v. Orange County Board of County Commissioners*, 162 F.3d 653, 656 (11th Cir. 1998) ("Since Bogle has presented no direct evidence that Orange County discharged him

---

[64] *See* doc. no. 41 (Linda Howard Employee Record), at ECF 5.

because of his age and relied, instead, on circumstantial evidence, the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, . . ., governs his ADEA case.") (ellipsis supplied); *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998) (applying *McDonnell Douglas* framework in an ADEA case).

The analytical framework developed by *McDonnell Douglas* and its progeny has three steps, the goal of which is that of "progressively . . . sharpening the inquiry into the elusive factual question of intentional discrimination." *St. Mary's Honor Center*, 509 U.S. at 506 (*quoting Burdine*, 450 U.S. at 255 n.8) (ellipsis in original). The plaintiff bears the initial burden of establishing a *prima facie* case. *Reeves*, 530 U.S. at 142; *Chapman*, 229 F.3d at 1024; *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217 (11th Cir. 1993). "If a plaintiff establishes a prima facie case . . . the employer must articulate a legitimate, nondiscriminatory rationale for the [contested employment action]. If the employer does so, the burden shifts back to the plaintiff to prove that the employer's asserted reason is pretextual." *Young v. General Foods Corp.*, 840 F.2d 825, 828 (11th Cir. 1988) (ellipsis and alteration supplied); *see also Chapman*, 229 F.3d at 1024.

A.    ***Prima Facie*** **Case**

To demonstrate a *prima facie* case for an ADEA violation based upon termination of employment, the plaintiff must prove four facts:  (1) that she was a

21

member of the class of persons protected by the ADEA, that is, individuals between the ages of 40 and 70;[65] (2) that she was discharged; (3) that she was qualified to perform the duties of the position from which she was dismissed; and (4) that she was replaced by a substantially younger person. *See, e.g.*, *Reeves*, 530 U.S. at 142; *Bogle*, 162 F.3d at 656-57; *Turlington*, 135 F.3d at 1432; *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207-08 (11th Cir. 1997); *Jameson v. Arrow Company*, 75 F.3d 1528, 1531 (11th Cir. 1996); *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1469-70 (11th Cir. 1991); *Verbraeken v. Westinghouse Electric Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989), *cert. dismissed*, 493 U.S. 1064 (1990).

The only disputed element of plaintiff's *prima facie* case is whether plaintiff was replaced by a "substantially younger person."[66]  In that regard, defendant states: "The Plaintiff's position as a full time ESA was filled, after her termination, by

---

[65] The protections of the ADEA extend to those individuals who "are at least 40 years of age but less than 70 years of age."  29 U.S.C. § 621(a).

[66] *See* doc. no. 23 (Motion for Summary Judgment), at 13.  The Eleventh Circuit expounded the "substantially younger" requirement in *Corbin v. Southerland International Trucks*, 25 F.3d 1545, 1549 (11th Cir. 1994), saying:

> Unlike race and sex discrimination cases, the plaintiff in an age discrimination case need not necessarily prove that his replacement was outside the protected class, that is, under forty years of age.  The plaintiff in an age discrimination case may establish a prima facie case merely by establishing that his replacement was younger than he, provided that the discrepancy between the ages, along with any other relevant evidence, is sufficient that a fact finder could reasonably infer age discrimination.

Donna Roberts, who was 53 years old on the day of the Plaintiff's termination."[67]  As previously noted, plaintiff's EEOC charge stated that she was "replaced by Katlyn [sic] Johnson who is 21 years old."[68]

This court has reviewed the Employee Records maintained by defendant for Donna Roberts and Kaitlyn Johnson.  Roberts was promoted to *full-time ESA* (*i.e.*, the position formerly occupied by plaintiff) on October 21, 2013 (*i.e.*, *47 days after* plaintiff's termination on September 4, 2013).[69]  Kaitlyn Johnson was employed by defendant as a *part-time* ESA from *April 5, 2013* (*i.e.*, *152 days prior to* plaintiff's termination on September 4, 2013), until December 1, 2013, and never worked as a full-time ESA for defendant.[70]  Moreover, plaintiff conceded in her responses to defendant's requests for admissions that "Kaitlyn Johnson was employed by [defendant] as a part time ESA from April 5, 2013 [*i.e.*, 152 days prior to plaintiff's termination], until December 1, 2013, and never worked full time as an ESA for [defendant]."[71]

Therefore, the appropriate inquiry is whether Donna Roberts, who was 53 years

---

[67] Doc. no. 23 (Motion for Summary Judgment), at 7, ¶ 16.

[68] Doc. no. 23-9 (EEOC Charge), at ECF 3.

[69] Doc. no. 23-11 (Donna Roberts Employee Record), at ECF 2.

[70] Doc. no. 23-10 (Kaitlyn Johnson Employee Record).

[71] Doc. no. 23-3 (Plaintiff's Response to Request for Admissions) ¶ 18 (alterations supplied); *see also* doc. no. 23-10 (Kaitlyn Johnson Employee Record).

of age on the date of plaintiff's termination, was "substantially younger" than plaintiff, who was 64 years of age: an age difference of eleven years.[72]

The Eleventh Circuit previously has held that an age difference of *just a few years* may be sufficient to establish that a plaintiff was replaced by someone "substantially younger." *See, e.g.*, *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1360 (11th Cir. 1999) (five years is sufficient); *Carter v. DecisionOne Corp.*, 122 F.3d 997, 1003 (11th Cir. 1997) (*per curiam*) (three years is sufficient); *Carter v. Miami*, 870 F.2d 578, 583 (11th Cir. 1989) (four years is sufficient). Even so, the Eleventh Circuit offered a message of caution in a recent opinion:

> We recognize that we have previously held, *in cases where*

---

[72] "[R]eplacement by one within the protected category [*i.e.*, over 40 years of age] will not *preclude* proof of a prima facie case." *Pace v. Southern Railway System*, 701 F.2d 1383, 1390 (11th Cir. 1983) (alterations supplied, emphasis in original). Even so, "in no case does the court hold that as a matter of law a prima facie case is established if a plaintiff simply shows [she] is in the protected group, was adversely affected by an employment decision, was qualified and was replaced by one younger than [herself]." *Id.* at 1390 (alterations supplied). To the contrary, the Eleventh Circuit has stated:

> The mere fact that one employee is replaced with another who is younger certainly does not, without more, give rise to an inference that age was even considered in the decision to dismiss or demote the first employee. Historical experience does often lend support to suspicions that replacements of black with whites or women with men are not coincidental. *However, whenever employees are replaced, their replacements are invariably either older or younger than they are, and the distinctions are usually unimportant.*

*Goldstein v. Manhattan Industries, Inc.*, 758 F.2d 1435, 1443 (11th Cir. 1985) (emphasis supplied). Thus, the plaintiff is not required to prove that she was replaced by someone less than 40 years of age, but only by someone "substantially younger." *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313 (1996).

> *plaintiffs presented substantial evidence of discriminatory animus beyond mere age difference*, that a smaller age difference was sufficient to meet the "substantially younger" element of the ADEA *prima facie* case. *See Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1360 (11th Cir. 1990) (holding that a 37-year-old was "substantially younger" than a 42-year-old). But we agree with the district court that, in this case, [the plaintiff] failed to create an inference of discrimination because a six-year age difference, without more, does not establish that [the plaintiff's] age was the but-for cause of the School Board's failure to hire him. *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312, 116 S. Ct. 1307, 134 L. Ed. 2d 433 (1996) ("The prima facie case requires evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion."). *See also Steele v. United States VA*, 2011 U.S. Dist. LEXIS 58200, 2011 WL 2160343, at *10 (M.D. Fla. June 1, 2011) (concluding that a 13-year age difference, without more, is insufficient to meet this standard); *Matthews v. City of Dothan*, 2006 U.S. Dist. LEXIS 91711, 2006 WL 3742237 at *12 (M.D. Fla. Dec. 18, 2006) (ruling that six-year age difference was insufficient to create an inference of age discrimination, when no other evidence of discriminatory animus was present).

*Suarez v. School Board of Hillsborough County, Florida*, No. 15-12891, 2016 WL 212503, at *9 n.1 (11th Cir. Jan. 19, 2016) (emphasis and alterations supplied).

Therefore, this court must address the question of whether, *in addition to the eleven-year age difference between plaintiff and her replacement*, there is substantial evidence of discriminatory animus.

Plaintiff identifies only the statements of Judy Thompson, Evelyn Kelley, and Brad Hinton as evidence of age discrimination. As previously stated, those statements do not constitute *direct evidence* of discrimination. Even so, construing

the evidence in the light most favorable to plaintiff, this court concludes that those statements, in conjunction with the fact that plaintiff was replaced by an individual eleven years her junior, are sufficient to satisfy the "substantially younger" element.

Therefore, plaintiff has demonstrated a *prima facie* case.

**B.      Legitimate, Nondiscriminatory Reasons**

The defendant may rebut the presumption of discrimination that arises from plaintiff's demonstration of a *prima facie* case by offering legitimate, nondiscriminatory reasons for her termination.  Defendant states:

> In this case, however hotly Plaintiff disputes the September 3, 2013 theft of the items found in her bag, she admitted in her deposition that she had consumed sodas from the Defendant's supplies for residents, on a near-daily basis, contrary to a policy with which she also admitted she was familiar.
>
> . . . .
>
> In addition to the Plaintiff's admitted misappropriation, it is not disputable that the Defendant was presented with evidence on September 3, 2013, from which it could reasonably have inferred that the Plaintiff stole the items found in her bag.  In addition to [Plaintiff's possession of the items], the Defendant obtained statements from two coworkers stating not only that the Plaintiff had admitted theft, but that her theft was motivated by an upcoming trip to the Smoky Mountains.

Doc. no. 23 (Defendant's Brief in Support of Motion for Summary Judgment), at 18-19 (ellipsis and alteration supplied).

An employer's honest belief that an employee violated a company policy

constitutes a legitimate, nondiscriminatory reason for termination. *See, e.g.*, *Kilgore v. Trussville Development, L.L.C.*, No. 15-11850, 2016 WL 1138412 (11th Cir. Mar. 24, 2016) ("An employer does not unlawfully discriminate against an employee 'if the employer fired an employee because it honestly believed that the employee had violated a company policy, even if it was mistaken in such belief.'") (quoting *Smith v. Papp Clinic, P.A.*, 808 F.2d 1449, 1452-53 (11th Cir. 1987)); *Kragor v. Takeda Pharmaceuticals America, Inc.*, 702 F.3d 1304, 1309 (11th Cir. 2012) (noting that evidence that an employee "violated" or "appeared to violate" the employer's policy constituted a legitimate, non-discriminatory reason for terminating the employee); *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989) ("[T]he City has articulated a legitimate, non-discriminatory reason for disciplining Jones — at the November 15 disciplinary hearing Jones admitted that he had committed all of the rule violations.") (alteration supplied).

Because defendant has produced substantial evidence that plaintiff violated its policy prohibiting unauthorized removal of facility property, it has satisfied its burden of producing a legitimate, nondiscriminatory reason for plaintiff's termination.

## C.      Pretext and the Doctrine of Collateral Estoppel

Defendant contends that the findings of the Alabama Department of Industrial Relations on plaintiff's unemployment compensation claim preclude her from

relitigating *the reason for her discharge* and, thus, conclusively establish that defendant terminated her for theft.

Collateral estoppel "precludes a party from relitigating in a subsequent action or proceeding an issue raised in a prior action or proceeding and decided against the party or those in privity." *Urfirer v. Cornfeld*, 408 F.3d 710, 716 (11th Cir. 2005). The Eleventh Circuit held in *Maniccia v. Brown*, 171 F.3d 1364 (11th Cir. 1999), that a "state court's decision upholding an administrative body's findings has preclusive effect in a subsequent federal court proceeding if:  (1) the courts of that state would be bound by the decision; and (2) the state proceedings that produced the decision comported with the requirements of due process." *Id.* at 1368; *see also Travers v. Jones*, 323 F.3d 1294, 1296 (11th Cir. 2003) ("When a state agency, acting in a judicial capacity, resolves disputed issues of fact properly before it that the parties have had an adequate opportunity to litigate, federal courts must give the agency's fact finding the same preclusive effect to which it would be entitled in the State's court.").

In some employment law contexts, Congress has abrogated, by statute, the doctrine of collateral estoppel for State administrative agency decisions. *See, e.g.*, *Astoria Federal Savings & Loan Association v. Solimino*, 501 U.S. 104, 107 (1991) (holding that *judicially unreviewed* findings of a State administrative agency made

28

with respect to an age discrimination claim have no preclusive effect on federal proceedings).[73]   Even so, the *Astoria* doctrine does not apply to the *judicially-reviewed* findings of the Alabama Department of Industrial Relations in the present case.   Accordingly, the court will address the question of whether the findings of the Alabama Department of Industrial Relations, as judicially reviewed and affirmed on appeal to the Circuit Court of Jackson County, are entitled to preclusive effect under Alabama law.   *See Elliott*, 478 U.S. at 799 ("[W]e hold that when a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding *the same preclusive effect to which it would be entitled in the State's courts*.") (quoting *Utah Construction & Mining Co.*, 384 U.S. at 422) (alteration, ellipsis, and emphasis supplied, internal citation omitted).

---

[73] The *Astoria* Court held that the filing requirements of the ADEA imply that the findings of a State agency are not entitled to preclusive effect, and cited three examples in support of that holding. *See Astoria*, 501 U.S. at 110-11.   First, the ADEA requires that, when a state has enacted its own age discrimination law, a complainant first must pursue the state-law claim in state court before filing an ADEA action in federal court.   *Id.* (citing 29 U.S.C. § 633(b)).   Second, the statute provides that "'no suit may be brought under [the ADEA] before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated.'"   *Id.* (quoting 29 U.S.C. § 633(b)) (alteration supplied).   Third, the statute provides a similar deadline for filing a charge with the EEOC, providing that "'[s]uch a charge shall be filed . . . within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.'"   *Id.* (quoting 29 U.S.C. § 626(d)(2)) (alteration supplied, ellipsis in original).   Those provisions "plainly assume the possibility of federal consideration [of ADEA claims] after state agencies have finished theirs," and federal proceedings after the conclusions of state proceedings "would be strictly *pro forma* if state administrative findings were given preclusive effect."   *Id.* (alteration supplied).

Alabama law provides that decisions of State agencies have preclusive effect when each of the following conditions is satisfied:

> (1) there is identity of the parties or their privies; (2) there is identity of issues; (3) the parties had an adequate opportunity to litigate the issues in the administrative proceeding; (4) the issues to be estopped were actually litigated and determined in the administrative proceeding; and (5) the findings on the issues to be estopped were necessary to the administrative decision.

*Ex parte Shelby Medical Center, Inc.*, 564 So. 2d 63, 68 (Ala. 1990) (quoting *Pantex Towing Corp. v. Glidewell*, 763 F.2d 1241, 1245 (11th Cir. 1985)); *see also Wal-Mart Stores, Inc. v. Smitherman*, 743 So. 2d 442, 445 (Ala. 1999), *overruled on other grounds by Ex parte Rogers*, 68 So. 3d 773 (Ala. 2010) (quoting *Ex parte Smith*, 683 So. 2d 431, 433 (Ala. 1996)).

Plaintiff's unemployment compensation claim was brought pursuant to an Alabama statutory system that permits some unemployed individuals to receive unemployment compensation benefits.  *See* Ala. Code § 25-4-1 *et seq.* (1975).  That statutory scheme provides, however, that "a claimant is partially disqualified from receiving unemployment-compensation benefits *if he or she was discharged for misconduct committed in connection with work*."  Ala. Code § 25-4-78(3)(c) (emphasis supplied).  Here, the Alabama Department of Industrial Relations found that plaintiff was "discharged from [her] last bona fide work with this employer *for*

*misconduct committed in connection with work*," and consequently, was subject to the

disqualifying provision under § 25-4-78(3)(c).[74]

The court therefore will address the five elements of collateral estoppel set

forth under Alabama law, to determine whether plaintiff is precluded from relitigating

the reason for her termination.

### 1.    Identity of the parties or their privies

The first element, which requires an identity of the parties or their privies, is

satisfied.[75]

### 2.    Identity of issues

Plaintiff contends that the issue before this court is *not identical* to the issue

that was litigated before the State administrative agency:

> The issue on appeal in the Jackson County Circuit Court that was
> "litigated" (summarily denied) had to do with the rights of the Plaintiff
> to unemployment benefits, not to the rights of the Plaintiff to be free
> from age discrimination.  Therefore, collateral estoppel does not apply.
>
>     Even if Defendant's argument were conceded by Plaintiff (that the
> Jackson County Circuit Court's ruling is binding on this Court), it still
> would not follow that this claim is precluded.  The Plaintiff could have
> been rightfully denied unemployment benefits and at the same time have
> been wrongfully discriminated against for her age.  Not even the
> Plaintiff is arguing that there wasn't *some* "misconduct" here; she drank
> sodas on the job that were technically only for the residents at her job

---

[74] *See* doc. no. 23-12, at ECF 2 (alteration and emphasis supplied).

[75] *See* doc. nos. 23-12, 23-13, and 23-14.

because she felt this was, while technically prohibited, effectively accepted and overlooked as to all employees by the Defendant. This technical violation was held to be enough, apparently, for the Jackson County Circuit Court, granting a Motion for Summary Judgment filed by the Defendant, to find that there was no reason to overturn the Department of Industrial Relations' decision to deny unemployment benefits; there was no trial on the facts and no "proof" of the allegations of theft against the Plaintiff (except the Plaintiff's admissions regarding the sodas) other than the word of the Defendant.

Doc. no. 25 (Plaintiff's Response in Opposition to Summary Judgment), at 7-8 (emphasis in original).

This court disagrees. Plaintiff's counsel confuses the issue of age discrimination with the question of whether defendant's stated, non-discriminatory basis for the contested employment action is pretextual. The Department of Industrial Relations was tasked with deciding whether plaintiff was disqualified from receiving unemployment compensation under the statute providing that "[a]n individual shall be disqualified for total or partial unemployment: . . . *If he was discharged from his most recent* bona fide *work for misconduct connected with his work . . .*" Ala. Code § 25-4-78(3)(c) (1975) (alteration, ellipses, and emphasis supplied). That State agency found that: "[t]he claimant [*i.e.*, plaintiff] was discharged for misappropriation of employer property for her personal use."[76]

Moreover, and more significantly, as the Eleventh Circuit observed in *Mora*

---

[76] Doc. no. 23-12, at ECF 3 (alterations supplied).

*v. Jackson Memorial Foundation, Inc.*, 597 F.3d 1201 (11th Cir. 2010),

> the Supreme Court [has] ruled out the idea of a "mixed motive" ADEA claim, instead requiring plaintiffs to show that age was the "but for" cause of an employment action. [*Gross v. FBL Financial Services, Inc.*, – U.S. –, 129 S. Ct. 2343, 2350 (2009)]. *The ADEA requires that "age* [be] *the 'reason' that the employer decided to act." Id.* Because an ADEA plaintiff must establish "but for" causality, no "same decision" affirmative defense can exist: *the employer either acted* "because of" *the plaintiff's age or it did not. Id.* at 2352 ("The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision.").

*Mora*, 597 F.3d at 1204 (alterations and emphasis supplied). In other words, a finding that plaintiff was terminated for *any reason other than her age* conclusively eliminates the possibility that defendant can be found liable under the ADEA. In light of all of the foregoing, the court concludes that the "identity of issues" element is satisfied.

### 3.    Adequate opportunity to litigate the issue

The third element of collateral estoppel under Alabama law requires that the parties be afforded an adequate opportunity to litigate, in the State agency administrative proceeding, the issue to be estopped. The Alabama Supreme Court has held that Alabama's Unemployment Compensation Act affords parties an adequate opportunity to litigate the issue of discharge in an unemployment compensation claim hearing. *See Smitherman*, 743 So. 2d at 446. The Court provided the following

33

reasoning in support of that holding:

> The Unemployment Compensation Act requires that the appeals tribunal "afford[] the parties reasonable opportunity for [a] fair hearing." Ala. Code 1975, § 25-4-93. The procedure for conducting the hearing is prescribed by regulations of the Department of Industrial Relations. *See* [Ala. Code] § 25-4-92(b); *see generally* Ala. Admin. Code r. 4.480-1-4-.04 to -.06. Those regulations provide for a hearing at which the parties are afforded the opportunity to present evidence and testimony of witnesses given under oath. *See* Ala. Admin. Code r. 480-1-4-.04. A party may be represented by an attorney. *See* [Ala. Admin. Code] r. 480-1-4-.05. The parties are also afforded the opportunity to request that the hearing officer issue subpoenas to compel the attendance of witnesses or the production of documents or other things. *See* [Ala. Admin. Code] r. 480-1-4-.06.

*Id.* (first two alterations in original, other alterations supplied).

The record in this case shows that an administrative hearing was held, by telephone, during which the "[c]laimant [*i.e.*, plaintiff] and employer representative with witness" were present.[77] Also, Beth C. Moore, the Administrative Hearing Officer, made findings of fact based upon the testimony presented to her during the telephone hearing.[78]

Although there is no evidence of record that plaintiff asserted before the Department of Industrial Relations or Administrative Hearing Officer that her termination was related to her age, that does not mean that she did not have the

---

[77] *See id.* at ECF 2 (alterations supplied).

[78] *See id.*

*opportunity to assert* that argument.  In order to receive unemployment benefits, plaintiff was required to demonstrate that she was not discharged for misconduct committed in connection with work.  *See Smitherman*, 743 So. 2d at 447.  If she believed that defendant discharged her on the basis of her *age*, then she had the burden to prove that assertion.  *See id.*  In conclusion, this court finds that plaintiff was given an adequate opportunity to litigate the issue of the reason for her termination.

### 4.    Actually litigated and determined

The fourth element also is satisfied, because the reason for plaintiff's termination was actually litigated in the State administrative proceeding, and was actually determined by the Administrative Hearing Officer.[79]

### 5.    Necessary to the State agency's decision

Finally, the fifth element is satisfied, because the Board of Industrial Relations needed to determine the reason for plaintiff's termination in order to decide whether plaintiff was eligible to receive unemployment compensation.

Accordingly, all elements necessary under Alabama law for collateral estoppel to apply have been satisfied, and plaintiff is precluded from relitigating the reason for her termination.  This court must accept, as an established fact, the finding of the

---

[79] *See generally* doc. no. 23-12.

Alabama Department of Industrial Relations that plaintiff was terminated for misconduct.  Thus, defendant has established that it did not terminate plaintiff's employment based on her age, and is entitled to summary judgment on plaintiff's ADEA claim.

## D.   Pretext Analysis Without Consideration of the Doctrine of Collateral Estoppel

Even if plaintiff was *not* estopped from relitigating that question, her assertion that defendant's legitimate, nondiscriminatory reason for terminating her is merely a pretext for age discrimination would fail on its merits.  Her responsive brief states:

> Plaintiff drank sodas on the job that were there for the residents of the care facility.  Defendant now states that five employees have been terminated since 2010 for theft.  (Defendant's Motion, page 7), but conveniently leaves out whether it was drinking sodas that did them in or something more serious.  Plaintiff intends to inquire through discovery whether any or all of those five were fired because they drank sodas intended for residents.

Doc. no. 25 (Plaintiff's Response to Motion for Summary Judgment), at 8.

As the court understands that statement, plaintiff initially had planned to demonstrate that the legitimate, nondiscriminatory reason proffered by defendant for plaintiff's termination was merely a pretext for age discrimination by presenting evidence of *comparators*.  Plaintiff did not develop such evidence, however.  Even though the time allotted for discovery spanned a period of six months, plaintiff

36

inexcusably delayed until one week prior to the discovery deadline before serving her first requests for discovery upon defendant.  This court, finding that there was no good cause for such an egregious delay, granted defendant's motion for a protective order — thereby relieving defendant of any obligation to answer plaintiff's eleventh-hour discovery requests.

Plaintiff also attempts to demonstrate pretext by stating that, even though she admittedly drank beverages reserved for use by the facility's residents, "the rest of them dranked [*sic*] them too."[80]  The Eleventh Circuit has stated that "evidence demonstrating that the *decision-maker* engaged in the same policy violation proffered for an employee's termination is 'especially compelling' evidence of pretext." *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1366 (11th Cir. 1999) (quoting *Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1291) (11th Cir. 1998)).  Plaintiff does not assert that *the decisionmakers* (*i.e.*, Administrator Brad Hinton and/or Personnel Director Cheryl Haney) violated the policy.  In fact, in her deposition, plaintiff specifically identified several *coworkers* who allegedly had engaged in misconduct similar to her own, while conspicuously excluding the names of any of her supervisors.[81]

---

[80] Doc. no. 25 (Plaintiff's Response in Opposition to Summary Judgment), at 5 (citing doc. no. 23-4 (Plaintiff's State-Court Deposition), at 39).

[81] *See* doc. no. 23-4, at 39 ("Evelyn Kelley and them, Jack, Gert, all of them did.").

Finally, defendant makes the point that, "less than six months before Plaintiff claims she was terminated with discriminatory intent, she was *reinstated* following her third violation of the Defendant's tobacco-free-campus policy. The decisionmakers who terminated Plaintiff for theft [*i.e.*, Administrator Brad Hinton and Personnel Director Cheryl Haney] also made the reinstatement decision."[82] The court finds that point persuasive. Indeed, it is doubtful that, if those individuals had desired to terminate plaintiff on the basis of age-related animus, they would have commuted her termination to a one-week suspension when they bore no obligation to do so.

In summary, plaintiff has failed to prove that the legitimate, nondiscriminatory reason proffered by defendant is merely a pretext for age discrimination. Therefore, the court concludes that plaintiff's ADEA claim is due to be dismissed, and defendant's motion for summary judgment granted.

## V.  CONCLUSION AND ORDER

In accordance with the foregoing, it is ORDERED that defendant's motion for summary judgment is GRANTED. Plaintiff's ADEA claim is DISMISSED WITH PREJUDICE. Costs are taxed to plaintiff. The Clerk is directed to close this file.

---

[82] Doc. no. 23 (Motion for Summary Judgment), at 24 (alteration supplied).

**DONE** and **ORDERED** this 13th day of May, 2016.

United States District Judge